ATOKA COAL & MINING COMPANY ET AL. VS ADAMS ET AL.

Opinion delivered October 26, 1899.

*1. Indians— 'Curtis Bill"—Mineral Royalties.*

The Act of Cong. of June 28, 1898 (30 Stat. 495) known as the "Curtis Bill," and which embodies the Dawes Agreement with the Choctaw and Chickasaw tribes of Indians, abrogated all mining leases made by any person or corporation with individual members of either of said tribes, directed that thereafter all mining operations should be conducted under the supervision of the Secretary of the Interior, and prohibited the payment to or receipt by any individual citizen, of royalties upon such minerals, also providing a penalty for the violation of this provision as a misdemeanor; and required all royalties to be thereafter paid into the United States Treasury, for the benefit of said tribes.  *Held,* That this law should not be so construed as to be retrospective in effect, and that it did not affect the rights of individual citizens of the Choctaw and Chickasaw tribes to royalties earned and payable when that act was passed, nor their right of action to enforce the payment of the same.

Error to the United States court for the Central District.

WILLIAM H. H. CLAYTON, Judge.

Action by H. W. Adams and others against the Atoka Coal & Mining Company.' Judgment for plaintiffs. Defendants bring error. Affirmed.

This is an action against the Atoka Coal & Mining Company for individual royalty due to the 'plaintiffs in the court below, the defendants in error in this court, prior to the 28th day of June, 1898, on which date the act of congress known as the "Curtis Bill" was passed, and which royalty accrued under and by virtue of a written agreement between the Atoka Coal & Mining Company and the defendants in error; and the only royalty sued for in this action is that which accrued prior to said 28th day of June, 1898, and the amount admitted to be due by the Atoka Coal & Mining Company in its answer is $4,446 03. In this written contract there are two stipulations on the part of the coal company for the payment of royalties; the first being in the following language: "And shall pay to the party of the first part a royalty of ¼ of one cent per bushel of 85 pounds on all coal," etc. That is what is known as the "individual royalty" to the citizens of the Choctaw Nation who were the owners of the coal claims. The second provision in the contract is as follows: "A further royalty of ½ of one cent per bushel of 85 pounds on all coal mined shall be paid to the properly authorized representatives of the Choctaw and Chickasaw Nations, as per terms of contract with said nations." The royalty admitted to be due in this case is what is known as the "individual royalty." The Choctaw and Chickasaw Nations have been paid all the royalty provided for in that agreement. Defendants in error contend that the contract under which this royalty accrued was a legal contract, and that they had a vested right in the accrued royalty, and that neither the Atoka agreement nor the Curtis bill was intended to affect royalties accrued prior to its passage, and that the Curtis bill itself does not affect

royalties accrued prior to its passage, and cannot be construed to affect such. The trial court required, by appropriate order, the defendant the Atoka Coal & Mining Company to deposit the amount it conceded to be due in the Merchant's National Bank at Ft. Smith, Ark., subject to the order of the court. The court overruled the motion of the Atoka Coal & Mining Company to require the secretary of the interior of the United States and the treasurer of the United States to enter, plead, demur, and propound their claim. It was represented to the court that the Choctaw Nation claimed the amount of money indicated under the provisions of the Curtis bill. On the 25th day of November 1898, this cause came on to be heard on motion of plaintiffs for an order to distribute the $4,446.03 theretofore admitted by the defendant to be due, and ordered to be paid into the registry of the court to be held subject to the order of the court, and the court ordered that the amount aforesaid be paid to the attorneys of record of the individual claimants in the proportions named in the order; thus refusing to award the money to the Choctaw Nation. From this judgment of the court a writ of error was prosecuted to this court. The transcript of the record contains the following agreement: "It is agreed by and between the plaintiff and defendants in error and their respective attorneys that both sides may file briefs at any time before this cause is called for hearing; that the same may be set and heard at the present January (1899) term of the court upon the record on file, and all the questions as to the formality or regularity of appeal waived, both sides offering to submit the case upon the question as to whether or not, under the Dawes agreement and the act of congress known as the 'Curtis Bill,' the defendants in error or the Choctaw tribe of Indians are entitled to the royalty claimed and admitted to be due by the Atoka Coal & Mining Company as set up in the record,"—which agreement was signed by all the attorneys in the case.

*Ira D. Oglesby*, for plaintiffs in error.

*J. G. Ralls*, for defendants in error.

*W. J. Horton*, for defendant in error J. J. McAlester.

SPRINGER, C. J. By agreement of counsel, set forth in the preceeding statement, this case is submitted upon the question as to whether, under the Dawes agreement, and the act of congress known as the "Curtis Bill," the defendants in error or the Choctaw tribe of Indians are entitled to the royalty claimed and admitted to be due by the Atoka Coal & Mining Company as set up in the record. The following provisions of the Curtis bill and the Dawes agreement are relied upon in support of the theory of the plaintiff in error:

"Sec. 16. That it shall be unlawful for any person, after the passage of this act, except as herein provided, to claim, demand or receive, for his own use or for the use of any one else, any royalty on oil, coal, asphalt or other mineral, * * * or for any one to pay any individual, any such royalty or rents or any consideration therefor whatsoever; and all royalties and rents hereafter payable to the tribe shall be paid under such rules and regulations as may be prescribed by the secretary of the interior, into the treasury of the United States, to the credit of the tribe to which they belong."

"Sec. 18. That any person convicted for violating any of the provisions of sections 16 and seventeen of this act shall be deemed guilty of a misdemeanor and punished by a fine of not less than one hundred dollars and shall stand committed until such fine and costs are paid (such commitment not to exceed one day for every two dollars of said fine and costs), and shall forfeit possession of any prop-

erty in question, and each day on which such offense is committed or continues to exist shall be deemed a separate offense. And the United States district attorneys in said territory are required to see that the provisions of said sections are strictly enforced and they shall proceed at once to dispossess all persons of such excessive holding of lands and to prosecute them for so unlawfully holding the same.''

The above sections are from the Curtis bill. The following are found in the Dawes agreement:

"All agreements heretofore made by any person or corporation with any member or members of the Choctaw or Chickasaw Nations, the object of which was to obtain such member or members' permission to operate coal or asphalt, are hereby declared void; provided, that nothing herein contained shall impair the rights of any holder or owner of a leasehold interest in any oil, coal rights, asphalt or mineral which may have been assented to by act of Congress, but all such interests shall continue unimpaired hereby and shall be assured by new leases from such trustees of coal or asphalt claims described therein by application to the trustees within six months after the ratification of this agreement, subject, however, to payment of advance royalties herein provided for."

"All leases under this agreement shall include the coal or asphaltum or other mineral, as the case may be, in or under 960 acres, which shall be in a square as nearly as possible, and shall be for thirty years. The royalty on coal shall be fifteen cents per ton of two thousand pounds on all coal mined, payable on the 25th day of the month next succeeding that in which it is mined. Royalty on asphalt shall be sixty cents per ton, payable same as coal: provided, that the secretary of the interior may reduce or advance royalties on coal or asphalt when he deems it for the best

(14)

interests of the Choctaws and Chickasaws to do so. No royalty shall be paid except into the United States treasury as herein provided."

"It is hereby agreed that all coal and asphalt within the limits of the Choctaw and Chickasaw Nations shall remain and be the common property of the members of the Choctaw and Chickasaw tribes (freedmen excepted), so that each and every member shall have an equal and undivided interest in the whole; and no patent provided for in this agreement shall convey any title thereto."

"All coal and asphalt mines in the two nations, whether now developed, or to be hereafter developed, shall be operated and the royalties therefrom paid into the treasury of the United States and shall be drawn therefrom under such rules and regulations as shall be prescribed by the secretary of the interior."

The foregoing quotations embody all the provisions of the Curtis bill and the Dawes agreement affecting the question in controversy. Defendants in error contend that the above provisions are not applicable to royalties due at the time of the passage of the Curtis bill, but, if such was the intention of congress, that it had no constitutional power to impair the existing rights of the individual Indians, who, under the constitution of the Choctaw Nation, were entitled to all coal claims discovered by them. The text of section 16 of the Curtis bill, quoted above, is relied upon by plaintiffs in error to establish the right of the Choctaw Nation to the royalties which were due at the time of the passage of the act, but which had not been paid up to that time. The language of the act is, "That it shall be unlawful for any person, after the passage of this act, to claim, demand or receive for his own use, or for the use of any one else, any royalty on oil, coal, asphalt, or other mineral, or for any one to pay any individual any such royalty or rents, or any con-

sideration therefor whatever." This language seems broad enough to cover the case at bar. The only question which can arise is as to whether the statute has a retrospective effect or not. Sutherland on Statutory Construction (section 406) states the rule in regard to retrospective laws as follows: "406. Retrospective Laws. Such statutes, when not forbidden by the constitution, may be valid, but there is always a strong leaning against giving them a retrospective operation, and this proceeds from the presumption that the legislature does not intend what is unjust. 'Those whose duty it is,' says Erle, C. J., 'to administer the law, very properly guard against giving to an act of parliament a retrospective operation, unless the intention of the legislature that it should be so construed is expressed in clear, plain, and unambiguous language.' Such laws are looked upon with general disfavor. In Dash vs Van Kleeck, Kent, C. J., said: 'There has not been, perhaps, a distinguished or elementary writer within the last two centuries who has had occasion to take notice of retrospective laws, either civil or criminal, but has mentioned them with caution, distrust, or disapprobation.'" And in section 463 the same author uses the following language: "Retrospective statutes relate to past acts and transactions. Retroactive statutes are those which operate on such acts and transactions, and change their legal character or effect. Congress, as well as the states, are expressly forbidden by the federal constitution to pass any ex post facto law, and the states are forbidden to pass any law impairing the obligation of contracts. As retrospective laws are generally unjust, and in many cases oppressive, they are not looked upon with favor. Statutes not remedial will, therefore, not be construed to operate retrospectively, even when they are not obnoxious to any constitutional objection, unless the intent that they shall do so is plainly expressed or made to appear. Where the intention as to being retrospective is doubtful, the statute may be

*[margin note]* Retrospective Laws.

construed as prospective only; but, where the language clearly indicates that it was intended to have a retrospective effect, it will be so applied." And further, in section 664, he states the rule as follows: "A statute should not receive such construction as to make it impair existing rights. create new obligations, impose new duties in respect of past transactions; unless such plainly appear to be the intention of the legislature. In the absence of such plain expression of design, it should be construed as prospective only, although its words are broad enough in their literal extent to comprehend existing cases." This question has been considered by the Supreme Court of the United States in the case of Steamship Co. vs Joliffe, 2 Wall. 450. That court held as follows: "The claim of the plaintiff below for half-pilotage fees, resting upon a transaction regarded by the law as a quasi contract, there is no just ground for the position that it fell with the repeal of the statute under which the transaction was had. When a right has arisen upon a contract or a transaction in the nature of a contract authorized by statute, and has been so far perfected that nothing remains to be done by the party asserting it, the repeal of the statute does not affect it, or an action for its enforcement. It has become a vested right, which stands independent of the statute. And such is the position of the claim of the plaintiff below in the present action. The pilotage services had been tendered by him. His claim to the compensation prescribed by the statute was then perfect, and the liability of the master or owner of the vessel had become fixed." In the case at bar the right of the individual claimants to the coal royalty in question had arisen upon the transaction in the nature of a contract authorized by the Choctaw statutes, and their right to this royalty had been so far perfected that nothing remained to be done by them. The Curtis bill repealed the Choctaw statute which permitted these individuals to receive the royalty, but it did not affect their right to

the royalties already earned; nor did it destroy their right of action for its enforcement. The rule laid down by the Supreme Court in the Steamship Case, supra, is in point, and is decisive of the case at bar. Numerous authorities might be cited to sustain this position. The court below did not err in awarding the royalty in question to the individual claimants. The judgment of the court below is therefore affirmed.

THOMAS and TOWNSEND, JJ., concur.