ATOKA COAL & MINING CO. et al. v. ADAMS et al.

(Circuit Court of Appeals, Eighth Circuit. October 24, 1900.)

No. 1,372.

INDIANS—ROYALTIES UNDER COAL LEASES—EFFECT OF CURTIS ACT.

The provision of the Curtis act (30 Stat. 495) § 16, making it unlawful for any person, after the passage of the act, to receive any royalty on oil, coal, or other mineral, or rents on any lands or property belonging to any one of the tribes or nations of the Indian Territory, with certain exceptions, and requiring such royalties and rents to be paid into the treasury of the United States to the credit of the tribe entitled thereto, is not retrospective in its operation, and does not affect royalties due to lessors under valid existing coal leases at the date of the passage of the act.

In Error to the United States Court of Appeals in the Indian Territory.

Ira D. Oglesby, for plaintiffs in error.
J. G. Ralls, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. It is conceded that, prior to the passage of what is known as the "Curtis Act,"—act of congress approved June 28, 1898, entitled "An act for the protection of the people of the Indian Territory, and for other purposes" (30 Stat. 495),—persons in the lawful possession and entitled to the usufruct of lands in the Choctaw Nation could grant valid leases to mine the coal in such lands for such royalties as might be agreed upon. On the 28th of January, 1888, James Davis and others entered into a contract whereby they granted to the Atoka Coal & Mining Company the right to mine coal on the lands therein described, for the royalties therein specified. The coal company entered into possession of the leased premises, and proceeded to mine and ship coal under this contract, and paid the stipulated royalties due the lessors and the Choctaw Nation for the coal mined down to May, 1898. The royalties which accrued under the lease from May, 1898, down to the passage of the Curtis act amounted to $4,446.03. The coal company ·filed its petition ·of interpleader, admitting that it owed the sum of $4,446.03 for royalties on the coal mined by it and not previously paid for, and prayed for leave to bring the money into court and to be discharged from all further liability therefor, and that certain persons named and the Choctaw Nation, who, it was alleged, set up a claim to the money adversely to the plaintiffs, be brought in and required to interplead for the same. The coal company having, by the leave and direction of the court, paid the money into the registry of the court, thereupon an order was entered that the defendant be "discharged from all liability herein," and due notice of the interpleader was served on the alleged claimants to the fund, including the 'Choctaw Nation. The Choctaw Nation entered no appearance, filed no pleadings in the cause, and set up no claim to the money. Waiving the question whether, upon this state of the record, the coal company and the Choctaw Nation, or either of them, can rightfully prosecute this writ of error, we proceed to the merits of the case. The single question on the merits of the case is, does the Curtis act operate to deprive the lessors of coal mines in the Choctaw Nation of the royalties due and owing to them for coal mined under valid leases prior to the passage of the act? The section of the act having any bearing upon the question reads as follows:

"Sec. 16. That it shall be unlawful for any person, after the passage of this act, except as hereinafter provided, to claim, demand, or receive, for his own use or for the use of any one ·else, any royalty on oil, coal, asphalt, or other mineral, or on any timber or lumber, or any other kind of property whatsoever, or any rents on any lands or property belonging to any one of said tribes or nations in said territory, or for any one to pay to any individual any such royalty or rents or any consideration therefor whatsoever; and all royalties and rents hereafter payable to the tribe shall be paid, under such rules and regulations as may be prescribed by the secretary of the interior, into the treasury of the United States to the credit of the tribe to which they belong: provided, that where any citizen shall be in possession of only such amount of agricultural or grazing lands as would be his just and reasonable share of the lands of his nation or tribe and that to which his wife and minor children are. entitled, he may. continue to use the same or receive the rents thereon until allotment has been made to him: provided further, that nothing

herein contained shall impair the rights of any member of a tribe to dispose of any timber contained on his, her, or their allotment."

This section is not retrospective in its operation upon royalties due to lessors under valid leases at the date of its passage. It prohibits the making of such leases in the future, and probably prohibits the payment of royalties under existing leases which may accrue after the passage of the act, but it clearly does not, in terms or by implication, extend to or affect royalties already due under existing leases. The function of the legislature is to prescribe rules to operate upon the actions and rights of citizens in the future. While, in the absence of a constitutional inhibition, the legislature may give to some of its acts a retrospective operation, the intention to do so must be clearly expressed, or necessarily implied from what is expressed; and, assuming the legislature to possess the power, its act will not be construed to impair or destroy a vested right under a valid contract unless it is so framed as to preclude any other interpretation. If congress had intended to deprive lessors of the royalties due and owing to them at the date of the act, it would have used appropriate language to express that intention, and would necessarily have made some provision for the disposition of such royalties. But it is clear from the language of the act that it does not deal with royalties already paid, or already due and owing to lessors under leases for coal already mined. Something is said in the brief of counsel about the "Dawes agreement," but its provisions likewise operate prospectively, and not retrospectively on royalties accruing under leases in existence at its date. This view of the case renders it unnecessary to consider the extent of the power of congress to legislate for the Indian Territory and the nations or tribes of Indians inhabiting the same, or to inquire whether congress can in any case impair the obligation of contracts or devest vested rights. It is enough to say that congress, by the Curtis act, neither attempted nor intended to interfere with the rights of lessors to royalties due them under their leases at the date of the passage of the act. The judgment of the United States court of appeals for the Indian territory (53 S. W. 539) and the judgment of the United States court for the Central district of the Indian Territory are affirmed.